IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHRISTOPHER MYERS**         ) | |
| ) | **Civil Action No. 08 - 318** |
| **Plaintiff,**         ) | |
| ) | |
| v.         ) | **Magistrate Judge Lisa Pupo Lenihan** |
| ) | |
| **SUPERINTENDENT ROZUM;**         ) | |
| **CORR. OFFICER SGT. MILLER;**         ) | |
| **CORR. OFFICER DUMAN,**         ) | |
| ) | |
| **Defendants.**         ) | |
| ) | |

**MEMORANDUM OPINION**

Plaintiff, Christopher Myers, commenced this action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983 against three Defendants employed by the Pennsylvania Department of Corrections (DOC) alleging that they violated his rights as protected by the Eighth and Fourteenth Amendments of the United States Constitution with respect to temporarily placing him on a top bunk despite having a medical authorization for the bottom bunk due to an epilepsy condition. Defendants include Superintendent Rozum, Correctional Officer Sergeant Miller and Correctional Officer Duman.

**A. Standard of Review - Summary Judgment**

Both Defendants and Plaintiff have filed motions for summary judgment pursuant to Fed. Rule Civ. Proc. 56 (doc. nos. 55 and 60). Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of

material fact and the movant is entitled to judgment as a matter of law. Fed. Rule Civ. Proc. 56(c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986) (party can move for summary judgment by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case."). The moving party bears the initial burden of identifying evidence that demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth specific facts showing that there is a genuine issue for trial or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Fed. Rule Civ. Proc. 56(c). *See also* Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). An disputed issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A disputed fact is material when it could affect the outcome of the suit under the governing substantive law. Anderson, 477 U.S. at 248. The inquiry, then, involves determining " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990), *cert. denied*, 501 U.S. 1218 (1991) (quoting Anderson, 477 U.S. at 251-52). If a court concludes that "the evidence is merely colorable . . . or is not significantly probative," then summary judgment may be granted. Anderson, 477 U.S. at 249-50.

**B. Undisputed Facts**

The record evidence reveals the following. Plaintiff previously was a Pennsylvania prisoner in the custody of the DOC in the State Correctional Institution at Somerset (SCI-Somerset). Although he had bottom bunk status due to a medical condition, Plaintiff was placed on a top bunk on September 5, 2007. When Plaintiff told Defendant Duman he had a medical bottom bunk status, Duman told him he would only be there temporarily and that he would be moved to a bottom bunk as soon as one became available (doc. no. 55-1, p. 2).

On October 18, 2007, at 9:15 p.m. while Plaintiff was sitting on the top bunk he got lightheaded and tried to get down to push the call button for help but fell from the bunk and hit his head on the locker. When the nurse arrived she asked the officer why he was on the top bunk because he had a medical bunk status. According to the medical records, at 9:50 p.m. on October 18, 2007, the medical department was informed that Plaintiff was found unresponsive in his cell (doc. no. 55-2, p. 16). Upon arriving on the block, Plaintiff was found lying on his right side in his cell and was not responsive. Plaintiff was taken to the medical department and was aroused with an ammonia cap. Plaintiff's head was examined when it was reported that he may have bumped his head; no hematoma, swelling, or redness was noted (doc. no. 55-1, p. 15). Plaintiff was kept in the infirmary until the next day; no seizure activity was noted during the night (doc. no. 55-1, p. 55-1, p. 14). On October 19, 2007, Plaintiff was re-assigned to the bottom bunk in cell FB 1028 (doc. no. 55-2, p. 17).

On October 22, 2007, Plaintiff filed Grievance No. 204870 complaining about his top bunk status (doc. no. 55-1, p. 2). On October 30, 2007, the Corrections Health Care Administrator (CHCA), Joseph W. Visinsky, responded to the Grievance indicating that Plaintiff

3

had a medical reason for bottom bunk and that the unit officer had informed him that Plaintiff was on bottom bunk status as of that time; therefore the grievance was resolved (doc. no. 55-1, p. 4).

On October 29, 2009, Plaintiff was seen by the medical department with a complaint about rib pain. At that time, he stated that he had a seizure on October 18, 2007 and fell from the top bunk (doc. no. 55-1, p. 14). He further denied any loss of consciousness or other injury. His medical chart has several notations that Plaintiff frequently missed taking his ordered medications (doc. no. 55-1, pp. 6-17).

On October 31, 2007, Plaintiff filed Grievance No. 205727 seeking monetary compensation for "damages caused by Corr. Officer Duman with his deliberate indifference of interfering with treatment orders of medical personnel" (doc. no. 55-2, p. 4).

Plaintiff contacted medical again on November 2, 2007 claiming that he had been having left rib pain since falling off the top bunk and that it hurt to take a deep breath (doc. no. 55-1, p. 12). Plaintiff was provided with a rib belt which he said helped with the pain and an x-ray was ordered (doc. no. 55-1, p. 12). On November 5, 2007, an x-ray of plaintiff's left ribs was taken with normal results (doc. no. 55-2, p. 2).

On November 5, 2007, CHCA Visinsky responded to Grievance No. 205727 as follows.

> The grievant is requesting monetary compensation for damages caused by staff.
>
> The grievant does not specify what damages occurred and there is no documentation on the medical record that would support the grievant's claim of damages. Documentation on the medical record shows the inmate was treated in a timely manner for a medical condition which is not caused by external means. The grievant was

4

> treated successfully on multiple occasions. The grievant was also strongly encouraged by the medical department to remain complaint with this medical treatment.
>
> There were no actions taken by staff which caused any damage to the grievant; therefore, his request for monetary compensation is denied.

Doc. No. 55-2, p. 6. Plaintiff appealed the denial of his grievance to Superintendent Rozum stating that he was ordered by C.O. Duman to move to the top bunk and later suffered a seizure causing him to fall off of the top bunk sustaining several injuries (doc. no. 55-2, pp. & 8). On November 9, 2007, Defendant Rozum remanded it back for a review of Plaintiff's medical records regarding his bottom bunk status (doc. no. 55-2, p. 9).

On November 9, 2007, Plaintiff reported to the medical department that he was having back pain from where he fell and angrily stated that tylenol was not helping with the pain (doc. no. 55-1, p. 12). He requested Percocet and was "told that it is a narcotic but patient does not seem to understand" (doc. no. 55-1, p. 12). His chart further notes that he frequently missed taking his ordered medications.

Meanwhile, on remand from Plaintiff's appeal of Grievance No. 205727, the medical department verified that Plaintiff had bottom bunk status since 2/21/06 and bottom tier status since 11/02/06 (doc. no. 55-2, p. 10). Plaintiff again appealed to Superintendent Rozum who on November 23, 2007, responded as follows.

> The Superintendent has reviewed the grievance based on the inmate's points of appeal. The Superintendent notes the initial appeal was remanded for further investigation. The Grievance Officer found the inmate does not specify what damages occurred. The Grievance Officer found the inmate claims he fell out of his bunk on October 18, 2007. The inmate did not report to Medical until October 29, 2007 where he just complained of pain in general. Medical staff

>  found no visible injuries. On November 2, 2007, Plaintiff went to medical complaining of a headache and again on November 6, 2007 complaining of rib pain. The inmate was x-rayed and the results were normal. Mr. Myers went to Medical November 19, 2007 complaining of back pain. A review of medical documentation by the CHCA found the inmate was seen by the Medical Department on November 15, 2007 and did not indicate any problems related to his alleged fall. The Superintendent upholds the initial response of the Grievance Officer to the remanded appeal. The CHCA found the inmate was treated on October 18, 2007 for a possible seizure. The inmate did not advise staff at that time that he fell from his bunk and had no bruising or complaints of any pain in the Infirmary. Based on medical documentation, there is no evidence of any injury. The inmate's request for damages is denied.

Doc. No. 55-2, p. 13. Plaintiff appealed this denial, which was upheld on February 1, 2008 (doc. no. 55-2, p. 14).

On December 16, 2007, Plaintiff was treated for possible seizure activity On December 26, 2007, Plaintiff went to medical complaining of left rib pain and a 2-3 centimeter lesion to the lower ribs was noted (doc. no. 55-2, p. 9). He also refused to take his medication (doc. no. 55-1, p. 7).

### C. Liability under 42 U.S.C. § 1983

Plaintiff seeks to assert liability against Defendants pursuant to 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

To establish personal liability against a defendant in a section 1983 action, that defendant must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1976). Accordingly, individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Personal involvement by a defendant can be shown by alleging either personal direction or actual knowledge and acquiescence in a subordinate's actions. Rode, 845 F.2d at 1207. Moreover, a supervising public official has no affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates. Notwithstanding, when a supervising official knowingly permits a continuing custom or policy that results in harm to the plaintiff, 1983 liability may attach. Colburn v. Upper Darby Township, 838 F.2d 663, 673 (3d Cir. 1988), *cert. denied*, 489 U.S. 1065 (1989) (Colburn I). In order to maintain a claim for supervisory liability, a plaintiff must show: 1) that the supervising official personally participated in the activity; 2) that the supervising official directed others to violate a person's rights; or 3) that the supervising official had knowledge of and acquiesced in a subordinates' violations. *See* Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

### D. Eighth Amendment

Plaintiff first claims that Defendants violated his rights as protected by the Eighth Amendment. In order to make out a prima facie case that a prison official's actions violate the Eighth Amendment's prohibition against cruel and unusual punishment, an inmate must show two elements. First, a prisoner must show that the condition, either alone or in combination with other

conditions, deprived him of "the minimal civilized measure of life's necessities," or at least a "single, identifiable human need." Wilson v. Seiter, 501 U.S. 294 (1991) (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).  Second, an inmate must demonstrate deliberate indifference to prison conditions on the part of prison officials. Farmer v. Brennan, 511 U.S. 825; Wilson, 501 U.S. at 297; Rhodes, 452 U.S. at 347.

To state an Eighth Amendment violation in the context of medical treatment, an inmate must show prove two elements: 1) plaintiff was suffering from a "serious medical need," and 2) prison officials were deliberately indifferent to the serious medical need. Gamble v. Estelle, 439 U.S. 897 (1978). The first showing requires the court to objectively determine whether the medical need was "sufficiently serious."  A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Gaudreault v. Municipality of Salem, 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied*, 500 U.S. 956 (1991); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988).

The second prong requires a court subjectively to determine whether the officials acted with a sufficiently culpable state of mind. Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury. Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993).

The parties acknowledge that Plaintiff suffers from a seizure disorder. Thus, Plaintiff has demonstrated the existence of a serious medical need. Notwithstanding, Plaintiff has failed to demonstrate that any defendant acted with deliberate indifference to his condition.

The "deliberate indifference" standard for purposes of liability under section 1983 is a stringent standard of fault requiring proof that a defendant disregarded a known or obvious consequence of his action. Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, 410 (1997). The defendant must be both aware of facts from which the inference could be drawn that a substantial harm exists and he must also draw the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994). An official is not deliberately indifferent if "he fails to alleviate a significant risk that he should have identified." *Id*. Moreover, deliberate indifference to a serious medical need of a prisoner is distinguishable from a negligent diagnosis or treatment of a medical condition; only the former conduct violates the Eighth Amendment. Medical malpractice may give rise to a tort claim in state court but does not necessarily rise to the level of a federal constitutional violation. Kost v. Kozakiewicz, 1 F.3d 176, 185 (3d Cir. 1993); Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993).

The Supreme Court explained the difference between negligence and constitutional claims in Estelle v. Gamble, 429 U.S. 97, 104 (1978). In that case, the prisoner, Gamble, was injured when a bale of cotton fell on him while he was unloading a truck. He went to the unit hospital where a medical assistant checked him for a hernia and sent him back to his cell. He returned to the hospital where he was given pain pills by an inmate nurse and then was examined by a doctor. The following day, his injury was diagnosed as a lower back strain; he was prescribed a pain reliever and a muscle relaxant. Over the course of several weeks, Gamble was seen by several doctors who prescribed various pain relievers and provided him with medical work excuses. Ultimately, despite his protests that his back hurt as much as it had the first day, medical staff certified Gamble to be capable of light work. During the next two months, Gamble received a

urinalysis, blood test, blood pressure measurement, and pain and blood pressure medication. Subsequently, a medical assistant examined Gamble and ordered him hospitalized for treatment of irregular cardiac rhythm.

The Supreme Court held that Gamble's allegations failed to state a claim upon which relief could be granted against the defendant, both in his capacity as a treating physician and as the medical director of the Corrections Department.

> Gamble was seen by medical personnel on 17 occasions spanning a 3-month period . . ..  They treated his back injury, high blood pressure, and heart problems. Gamble has disclaimed any objection to the treatment provided for his high blood pressure and his heart problem; his complaint is "based solely on the lack of diagnosis and inadequate treatment of his back injury." The doctors diagnosed his injury as a lower back strain and treated it with bed rest, muscle relaxants and pain relievers.  Respondent contends that more should have been done by way of diagnosis and treatment, and suggests a number of options that were not pursued.  The Court of Appeals agreed, stating:  "Certainly an x-ray of (Gamble's) lower back might have been in order and other tests conducted that would have led to appropriate diagnosis and treatment for the daily pain and suffering he was experiencing."  <u>But the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court under the Texas Tort Claims Act</u>.

<u>Gamble</u>, 427 U.S. at 107 (internal citations omitted) (emphasis added).

Like the prisoner in Gamble, Plaintiff at bar has failed to demonstrate that he suffered a constitutional violation, a prerequisite for recovery under 42 U.S.C. § 1983.  Plaintiff's medical records indicate that he received extensive medical treatment for his complaints.  While an intentional refusal to provide <u>any</u> medical treatment to an inmate suffering from a serious medical

need manifests deliberate indifference and is actionable under the Eighth Amendment, the Eighth Amendment does not require that a prisoner receive every medical treatment that he requests or that is available elsewhere.[1] A disagreement as to the appropriate choice of medical treatment does not give rise to a constitutional violation because the "right to be free from cruel and unusual punishment does not include the right to the treatment of one's choice." Layne v. Vinzant, 657 F.2d 468, 473 (1st Cir. 1981). Mere disagreements over medical judgment do not state Eighth Amendment claims as there are typically several acceptable ways to treat an illness. White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990) (citations omitted). *Accord* Young v. Quinlan, 960 F.2d 351, 358 n.18 (3d Cir. 1992) (an inmate's disagreement with prison personnel over the exercise of medical judgment does not state claim for relief under section 1983).

To survive Defendants' motion for summary judgment, Plaintiff is required to point to some evidence to show that Defendants knew or were aware of a substantial risk of serious harm to Plaintiff. Singletary v. Pennsylvania Dept. of Corrections, 266 F.3d 186, 192 n.2 (3d Cir. 2001)). Specifically, there is no record evidence that suggests that any Defendant knew that Plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it or that he had any reason to know that he faced any substantial harm. While Plaintiff was temporarily assigned to a top bunk status, at most, such action was temporary from September 5,

---

1. *See, e.g.*, Dias v. Vose, 960 F.2d 143 (1st Cir. 1991); United States v. DeCologero, 821 F.2d 39, 42 (1st Cir. 1987) ("though it is plain that an inmate deserves adequate medical care, he cannot insist that his institutional host provide him with the most sophisticated care money can buy"); Ferranti v. Moran, 618 F.2d 888, 891 (1st Cir. 1980) (a dispute over the exercise of professional medical judgment may present a colorable claim of negligence, but it falls short of alleging a constitutional violation); Layne v. Vinzant, 657 F.2d 468, 474 (1st Cir. 1981) (where the dispute is over the adequacy of the medical treatment, federal courts should be reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law).

11

2007 to October 19, 2007. Such action, at most, can be considered mere negligence, which cannot support liability under 42 U.S.C. § 1983. *See, e.g,* Burley v. Upton, 257 Fed. App'x 207, 210 (11th Cir. 2007) ("Even if Burley did have a 'serious medical need,' he failed to show that officials were anything more than negligent by keeping him in a top bunk for five days."); Goodson v. Willard Drug Treatment Campus, 615 F.Supp.2d 100, 102 (W.D.N.Y. 2009) (holding that prisoner's temporary assignment to top bunk did not violate Eighth Amendment due to his alleged medical needs); Johnson v. Sinkston, Civ. No 04-0707, 2006 WL 752991 (S. D. Ala. Mar. 22, 2006) (holding that defendants were not deliberately indifferent in failing to assign the plaintiff to a bottom bunk).

Moreover, Plaintiff has failed to demonstrate that he suffered any harm as a result of Defendants' actions in temporality placing him on a top bunk. Plaintiff was thoroughly examined following the October 18, 2007 incident and no injuries were noted. Moreover, Plaintiff was seen and treated by the medical department for his complaints of back and rib injury, which were not attributable to the October 18, 2007 incident. In light of the record, the court does not believe a rational trier of fact could find that any defendant was deliberately indifferent to this Plaintiff's serious needs. Accordingly, Defendants are entitled to summary judgment as to Plaintiff's claims alleging inadequate medical treatment.

### E. Equal Protection

Plaintiff also raises a claim of discrimination under the Equal Protection Clause of the Fourteenth Amendment, which provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. "This is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated

should be treated alike.' " Artway v. Attorney General of State of N.J., 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439 (1985)).

The level of scrutiny applied to ensure that classifications comply with this guarantee differs depending on the nature of the classification. Classifications involving suspect or quasi-suspect class, or impacting certain fundamental constitutional rights, are subject to heightened or "strict" scrutiny. City of Cleburne, 473 U.S. at 439. Other classifications are subject to the "rational basis" test, which requires that a classification need only be rationally related to a legitimate state interest to survive an equal protection challenge. F.C.C. v. Beach Communications, Inc., 508 U.S. 307 (1993) (statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts); Chapman v. United States, 500 U.S. 453, 465 (1991).

Prisoners are not a suspect class. Lee v. Governor of State of N.Y., 87 F.3d 55, 60 (2d Cir. 1996); United States v. King, 62 F.3d 891, 895 (7th Cir. 1995); Latham v. Brown, 11 F.3d 1070, 1993 WL 394802 (D.C. Cir. 1993). Because prisoners are not a suspect class, the government may treat incarcerated defendants differently as long as its decisions are "rationally related to a legitimate ... [government] interest." King, 62 F.3d at 895 (quoting City of Cleburne, 473 U.S. at 440). Moreover, to demonstrate an equal protection violation, an inmate has the burden of proving the existence of purposeful discrimination. Hernandez v. New York, 500 U.S. 352 (1991); McCleskey v. Kemp, 481 U.S. 279, 292 (1987). Official action does not violate the Equal Protection Clause solely because it results in a disproportionate impact; proof of discriminatory intent or purpose is required to show a violation. Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 265 (1977); Washington v. Davis, 426 U.S. 229, 239

(1977); Stehney v. Perry, 101 F.3d 925, 938 (3d Cir. 1996).  Discriminatory purpose implies more than intent as volition or intent as awareness of consequences.  It implies that the decisionmaker selected a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group.  Hernandez, 500 U.S. at 360.  An inmate must offer evidence specific to his own case that would support an inference that unlawful considerations played a part in the adverse decision.  McCleskey, 481 U.S. at 293.

In the case at bar, Plaintiff has not submitted any evidence to support his wholly conclusory allegations that he was discriminated against.  Consequently, defendants are entitled to summary judgement as to this claim.  *Accord* Goodson v. Willard Drug Treatment Campus, 615 F.Supp.2d 100, 102 (W.D.N.Y. 2009).  An appropriate order follows.

Dated: March 30, 2010   _____
                        Lisa Pupo Lenihan
                        United States Magistrate Judge

cc:     Christopher Myers
        3146 Marston Street
        Philadelphia, PA 19140